# United States District Court

## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **In the matter of the search of:**<br>**An Apple iPhone 15 Pro seized from Armondo PALMA, serial number unknown, with a Lock Screen photograph depicting PALMA and the Minor Victim.** | **Case No.** 24-MJ-128-JAR |

## APPLICATION FOR SEARCH WARRANT

I, Dustin Carder, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the **EASTERN** District of **OKLAHOMA** *(identify the person or describe property to be searched and give its location)*:

### SEE ATTACHMENT "A"

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

### SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 18, United States Code, Sections 2241(c), 2246(2)(C), 1151, and 1153, and Title 18, United States Code, Section 2251 (a) and (e) and the application is based on these facts:

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
DUSTIN CARDER
Special Agent
Homeland Security Investigations

Sworn to :

Date: _____April 17, 2024_____

_____
*Judge's signature*

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

City and state: _____Muskogee, Oklahoma_____

**Affidavit in Support of an Application
Under Rule 41 for a Warrant to Search and Seize**

I, Dustin L. Carder, being first duly sworn under oath, depose and state:

**Introduction and Agent Background**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant authorizing the examination of property—an Apple iPhone 15 Pro seized from Armondo PALMA, serial number unknown, with a Lock Screen photograph depicting PALMA and the Minor Victim —which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant.

3. I have been employed as a Special Agent ("SA") with Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") since December 2018 and am currently assigned to the Office of the Resident Agent in Charge in Tulsa, Oklahoma, and am currently assigned to investigate crimes involving child exploitation. While employed by HSI, I have investigated federal criminal violations related to child exploitation and child pornography. I have gained experience through training at the Federal Law Enforcement Training Center's (FLETC) twelve-week Criminal Investigator Training Program (CITP) and the sixteen-week Homeland Security Investigations Special Agent Training (HSISAT) program, and everyday work relating to conducting these types of investigations. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including

computer media. I have received focused child exploitation training covering topics such as: interview techniques, live streaming investigations, undercover investigations, capturing digital evidence, transnational child sex offenders, and mobile messaging platforms utilized by these types of offenders. I am an investigative officer, or law enforcement officer, of the United States of America within the meaning of 18 U.S.C. § 2510(7) and Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is an officer of the United States who is empowered by law to request search warrants and to conduct investigation of, and make arrests for, offenses enumerated in Title 18. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2423, 2422, 2251, 2252, and 2252(a).

4. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

5. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of Title 18 U.S.C. §§ 2241(c), 2246(2)(C), 1151 & 1153 (Aggravated Sexual Abuse of a Minor in Indian Country), Title 18 U.S.C. § 2251(b) & (e) (Sexual Exploitation of a Child by a Parent), Title 18 U.S.C. § 2252(a)(2) and (b)(1) (Receipt/Distribution of Child Pornography), and Title 18 U.S.C. § 2252(a)(4)(B) and (b)(2), 1151 & 1153 (Possession of Child Pornography in Indian Country) will be located in the electronically

stored information described in Attachment B and is recorded on the Device described in Attachment A.

**Jurisdiction**

6. "[A] warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States." 18 U.S.C. § 3103a.

7. The requested search is related to the following violations of federal law:

a. Title 18 U.S.C. §§ 2241(c), 2246(2)(C), 1151 & 1153 prohibit a person from attempting to engage in, or engaging in a sexual act with a person who has not attained the age of 12 years in the special maritime and territorial jurisdiction of the United States, such as Indian Country; the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

b. Title 18 U.S.C. § 2251(b) & (e) prohibits any parent, legal guardian, or person having custody or control of a minor who knowingly permits such minor to engage in, or to assist any other person to engage in, sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct shall be punished as provided under subsection (e) of this section, if such parent, legal guardian, or person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

c. Title 18 U.S.C. § 2252(a)(2) and (b)(1) prohibits any person from knowingly receiving, or distributing, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, if— (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct.

3

d. Title 18 U.S.C. § 2252(a)(4)(B) and (b)(2), 1151 & 1153 prohibits any person from knowingly possessing or accessing with the intent to view, or attempting or conspiring to possess or access with the intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

8. Venue is proper because the Device to be searched is located within the Eastern District of Oklahoma.

### Identification of the Device to be Examined

9. The property to be searched is an an Apple iPhone 15 Pro seized from Armondo PALMA, serial number unknown, with a Lock Screen photograph depicting PALMA and the Minor Victim, hereinafter the "Device." The Device is in the custody of HSI and will be located in the Eastern District of Oklahoma at the time this affidavit is sworn to and authorized by a judge.

10. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

### Definitions

11. The following definitions, inclusive of all definitions contained in 18 U.S.C. § 2256, apply to this affidavit and the attachments incorporated herein:

a. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in

sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct;

b. The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state;

c. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years;

d. "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form;

e. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person; and

f. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## Probable Cause

12. On April 13, 2024, Michael Oliver, an Investigator with the District 16 District Attorney's Office, Poteau, LeFlore County, Oklahoma, in the Eastern District of Oklahoma, was called to assist in a case by LeFlore County Sheriff's Office ("LCSO").

13. During the course of his investigation, he interviewed an individual by the name of Alicia Simons ("Simons"). Simons stated that Armondo Palma ("PALMA") sent her videos and pictures using Snapchat[1].

14. Simons stated her Snapchat account has the username aliciasimons222 and PALMA's Snapchat account has the username apalma9133. Simons stated that PALMA's phone number is (918) 658-4260.

15. Simons was previously romantically involved with PALMA. During the course of that relationship, PALMA informed Simons that he has a five-year-old daughter.

16. Simons was home from college while on spring break. While home, Simons received a series of photos and videos from PALMA. Simons stated most of the files appeared to be taken in a hotel room and that one of them appeared to have someone else filming the video.

17. Within one of these videos PALMA can be seen using his penis to penetrate the vagina of a young girl, PALMA can be seen having the child use her hand to stroke his penis while she is on an iPad, and PALMA can be seen placing his mouth on the child's vagina. Simons stated that PALMA referred to the young girl as his daughter within these videos.

---

[1] Snapchat is an American multimedia instant messaging app and service developed by Snap Inc., originally Snapchat Inc. One of the principal features of Snapchat is that pictures and messages are usually only available for a short time before they become inaccessible to their recipients.

18. While interviewing Simons, Investigator Oliver located PALMA's publicly available information and located an image of a little girl. Simons confirmed that the little girl on PALMA's Facebook page was the same girl present in the images sent to her by PALMA on Snapchat.

19. Investigator Oliver confirmed that the child appeared to be approximately five-years of age.

20. Open records searches show that that PALMA renewed his driver's license in January of 2024 to an address at 21814 Cedar Hill Drive Howe, LeFlore County, Oklahoma 74940 (SUBJECT PREMISES). From this information, Investigator Oliver was able to find tax records for the residence and learned that Vicki Wilson owns the property.

21. During surveillance of the house, Investigator Oliver saw that the residence had a vehicle parked outside with a Choctaw Nation tribal license attached to it. Investigator Oliver discovered that PALMA has a Certificate of Degree of Indian Blood through the Bureau of Indian Affairs, and is a member of the Choctaw Nation. Investigator Oliver sought the assistance of HSI Tulsa to further the investigation.

22. Through research of law enforcement and State of Oklahoma databases, an HSI analyst located two vehicles registered to PALMA at the SUBJECT PREMISES: a 2019 Kia Forte with Choctaw Nation tag 09358CH, and a 2018 Ford Mustang with Choctaw Nation tag CH98302. During surveillance on April 14, 2024, both of these vehicles were observed at the SUBJECT PREMISES.

23. Pursuant to this warrant Special Agents with HSI arrived at the SUBJECT PREMISES on April 14, 2024, in order conduct a search. While at the SUBJECT PREMISES, they located a minor female, and her biological mother, Brooklyn Elaine Wilson ("WILSON").

24. Special agents located an iPhone 14 Pro Max, with IMEI # 35 342781 454313 6, on WILSON's person. This device was seized pursuant to the search warrant.

25. An initial review of the contents of this device was performed at the SUBJECT PREMISES. This search revealed that WILSON had the application Snapchat downloaded on her phone. This account has the username "brooklynwil25."

26. Conversations between WILSON's and PALMA's account, "apalma9133," are present on the device. The saved communications between WILSON and PALMA show videos of a female hand spreading the labia majora of a minor female and video of an adult male penis being rubbed against a minor female's vagina. In one video, an adult male can be seen performing oral sex on a female child, who appears to be five years old. The adult male's face is clearly visible within this video.

27. The child within these videos has been positively identified as the biological child of WILSON and PALMA, "Minor Victim" (D.O.B. 00/00/2018).

28. Based on our ongoing investigation, the Agents reviewing the video have identified the adult male as PALMA.

29. Bedding, pillows, and blankets can be seen in the videos of Minor Victim being sexually abused. Items consistent with those depicted within the videos were observed to be in the SUBJECT PREMISES during a search for electronic evidence on April 14, 2024.

30. In one video, WILSON can be seen slapping Minor Victim on the buttocks with a dildo that is murky and has pink and purple polka dots.

31. Minor Victim was wearing underwear in some of these videos. Underwear matching those in the videos was observed by agents at the SUBJECT PREMISES.

32. WILSON is wearing undergarments and a lingerie in some of these videos. Underwear matching those in the videos was observed by agents at the SUBJECT PREMISES.

33. Minor Victim can be seen clinging to stuffed animals in videos while she is being sexually abused. Stuffed animals matching those in the videos were observed at the SUBJECT PREMISES.

34. PALMA was not present at the SUBJECT RESIDENCE at the time of the execution of the search warrant. Agents were able to determine that PALMA was on the campus of Carl Albert college in Poteau, Oklahoma, in the Eastern District of Oklahoma. Agents observed PALMA's silver 2019 Ford Mustang in a parking lot on campus. In communications with Carl Albert Campus Police who were reviewing camera footage, agents learned PALMA was wearing a bright yellow shirt and was playing basketball in a gymnasium on campus.

35. Investigator Oliver and I contacted PALMA inside of the gymnasium and asked him to step outside. PALMA complied and was then arrested for violation of Title 18 U.S.C. §§ 2241(c), 2246(2)(C), 1151 & 1153 (Aggravated Sexual Abuse of a Minor in Indian Country), and Title 18 U.S.C. § 2252(a)(2) and (b)(1) (Receipt/Distribution of Child Pornography). Agents attempted to interview PALMA; however, he requested an attorney.

36. The Device was located in the gymnasium, along with PALMA's shoes and hat. The lock screen of the Device displays a picture of PALMA and Minor Victim. I then took custody of the Device.

37. The Device is currently in the lawful possession of HSI. It came into HSI's possession in the following way: seized incident to arrest.

38. The Device is currently in HSI custody and will be located in the Eastern District of Oklahoma at the time this affidavit is sworn to and authorized by a judge. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the

extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of HSI.

## Technical Terms

39. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable

storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna

receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

40. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Device.

**Characteristics Common to Individuals Who Exhibit a Sexual Interest in Children and Individuals who Distribute, Receive, Possess and/or Access with Intent to View Child Pornography**

41. Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who distribute, receive, possess, and/or access with intent to view child pornography:

a. Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity;

b. Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts;

c. Such individuals almost always possess and maintain digital or electronic files of child pornographic material, that is, their pictures, videos, photographs, correspondence, mailing lists, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, videos, photographs, correspondence, and mailing lists for many years;

14

d. Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis;

e. Based on my training and experience and speaking with other special agents, I know that such individuals have taken their electronic devices and storage media, which contain their collections of child pornography, with them when they have moved or changed residences;

f. Such individuals may also take it upon themselves to create their own child pornography or child erotica images, videos or other recordings, or engage in contact sex offenses with children. These images, videos or other recordings may be taken or recorded covertly, such as with a hidden camera in a bathroom, or the individual may have child victims he or she is abusing in order to produce child pornographic or child erotica images, videos or other recordings. Studies have shown there is a high cooccurrence between those who traffic in child pornography and commit sex offenses with children. Such individuals may also attempt to persuade, induce, entice, or coerce child victims in person or via communication devices to self-produce and send them child pornography or to meet in person for sex acts. These images, videos or other recordings are often collected, traded, or shared;

g. Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools.

Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted"[2] it;

h. Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography;

i. Such individuals prefer not to be without their child pornography for any prolonged period of time. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

### Background on Child Pornography, Computers, the Internet, and Email

42. I have had both training and experience in the investigation of computer-related crimes. Based on my training, experience, and knowledge, I know the following:

a. Computers, smartphones[3] and digital technology are the primary way in which individuals interested in child pornography interact with each other. Computers and smartphones basically serve four functions in connection with child pornography:   production, communication, distribution, and storage;

---

[2] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"); *see also United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012) (Posner, J.) (collecting cases, e.g., *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *United States v. Richardson*, 607 F.3d 357, 370–71 (4th Cir. 2010); *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010).)

[3] Smartphones are a class of mobile phones and of multi-purpose mobile computing devices. They are distinguished from feature phones by their stronger hardware capabilities and extensive mobile operating systems, which facilitate wider software, internet (including web browsing over mobile broadband), and multimedia functionality (including music, video, cameras, and gaming), alongside core phone functions such as voice calls and text messaging.

b. Digital cameras and smartphones with cameras save photographs or videos as a digital file that can be directly transferred to a computer by connecting the camera or smartphone to the computer, using a cable or via wireless connections such as "WiFi" or "Bluetooth." Photos and videos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone. These memory cards are often large enough to store thousands of high-resolution photographs or videos;

c. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Mobile devices such as smartphones and tablet computers may also connect to other computers via wireless connections. Electronic contact can be made to literally millions of computers and smartphones and tablets around the world. Child pornography can therefore be easily, inexpensively and anonymously (through electronic communications) produced, distributed, and received by anyone with access to a computer or smartphone;

d. A device known as a router in conjunction with a modem allows numerous computers to connect the Internet and other computers through the use of telephone, cable, or wireless connection. A router, in conjunction with a modem, can connect literally millions of computers around the world. Routers often store information as to which computer used a modem to connect to the Internet at a specific time and location. This information when viewed along with the traces or "footprints" can provide valuable information on who distributed and/or received a visual depiction of a minor engaged in sexually explicit conduct and who possessed and accessed with intent to view a visual depiction of a minor engaged in sexually explicit conduct;

17

e. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. Electronic storage media of various types – to include computer hard drives, external hard drives, CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices which are plugged into a port on the computer – can store thousands of images or videos at very high resolution. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. Some media storage devices can easily be concealed and carried on an individual's person. Smartphones and/or mobile phones are also almost always carried on an individual's person (or within their immediate dominion and control) and can additionally store media;

f. The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion;

g. Individuals also use online resources to retrieve and store child pornography. Some online services allow a user to set up an account with a remote computing service that may provide e-mail services and/or electronic storage of computer files in any variety of formats. A user can set up an online storage account (sometimes referred to as "cloud" storage) from any computer or smartphone with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer, smartphone or external media in most cases; and

h. As is the case with most digital technology, communications by way of computer or smartphone can be saved or stored on the computer or smartphone used for these purposes. Storing this information can be intentional (i.e., by saving an e-mail as a file on the computer

or smartphone, or saving the location of one's favorite websites in, for example, "bookmarked" files). Digital information can also be retained unintentionally such as the traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer or smartphone user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

### Electronic Storage and Forensic Analysis

43. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

44. I know that cellular telephones are often equipped with digital cameras and those phones possess the capability to transmit and/or store electronic images. I know that in many cases, cellular telephones maintain photographs of illegal activities, including the sexual abuse/exploitation of a child, the receipt, distribution, and possession of child pornography. These photos are sometimes stored in their cellular phones and often are transmitted or sent from one electronic media device to another. I also know that cellular phones may also contain notes regarding potential illegal acts that are recorded by the subject who possesses the electronics. Furthermore, I know that text messages and emails are often used by two or more persons to communicate information regarding illegal activities, between principals and co-conspirators of those crimes.

45. I know that cellular telephones are utilized by the majority of individuals in the United States and have become a staple of communication between individuals using text messaging,

visual and audible communications (telephone calls and FaceTime type communications) as well as applications like "Snapchat." Additionally, individuals utilize their cellular devices to take pictures, keep notes, as a GPS (global positioning System) device, and even to conduct illicit or illegal activity. Communications on phones are kept for long periods and transferred from one phone to another when replaced. This is done through the use of Cloud storage and direct transfer conducted at the time of purchase or by the individual themselves. Individuals utilize this method as not to lose data that is stored on the phone such as contacts, photos, notes, and other important information to the individual. This data includes contacts used to conduct illegal activities to include the sexual abuse/exploitation of a child, the receipt, distribution, and possession of child pornography.

46. Cellular telephones are often used to facilitate offenses and allow criminals to maintain communication with each other before, during and after the commission of offenses. I am aware that cellular telephones have the capacity to store a vast amount of information, including but not limited to: telephone numbers, voice messages, text messages, e-mail, photographs, videos, address books, records, phone call histories, contact and other information. This information may be contained on the cellular telephone.

47. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.  I know that when an individual uses an electronic device to record the sexually exploit a minor victim, receive, distribute, or possess child pornography, the individual's electronic device will generally serve both as an instrumentality for committing the

21

crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

48. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

49. *Manner of execution*. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

50. *Methods of examination*. In conducting this examination, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crimes under investigation, including but not limited to undertaking a cursory inspection of all information within the Device. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an

initial matter, keyword searches work only for text data, yet many types of files commonly associated with stored cellular device data, such as pictures and videos, do not store as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications associated with a cellular device, as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications. Consequently, often many communications in cellular device data that are relevant to an investigation do not contain any searched keywords.

### Conclusion

51. Based on the information set forth in this affidavit, I submit there is probable cause to believe that Title 18 U.S.C. §§ 2241(c), 2246(2)(C), 1151 & 1153 (Aggravated Sexual Abuse of a Minor in Indian Country), Title 18 U.S.C. § 2251(b) & (e) (Sexual Exploitation of a Child by a Parent), Title 18 U.S.C. § 2252(a)(2) and (b)(1) (Receipt/Distribution of Child Pornography), and Title 18 U.S.C. § 2252(a)(4)(B) and (b)(2), 1151 & 1153 (Possession of Child Pornography in Indian Country) have been violated, and that evidence of these offenses, more fully described in Attachment B, are located on the Device described in Attachment A. I respectfully request that this Court issue a search warrant for the property described in Attachment A, authorizing the seizure of the items described in Attachment B.

52. I request to be allowed to share this affidavit and the information obtained from this search with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

Dustin L. Carder
Special Agent
Homeland Security Investigations

Sworn to on April __17__, 2024.

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **Property to be Searched**

The property to be searched is an Apple iPhone 15 Pro seized from Armondo PALMA, serial number unknown, with a Lock Screen photograph depicting PALMA and the Minor Victim, hereinafter the "Device." The Device is currently in HSI custody and will be located in the Eastern District of Oklahoma at the time this affidavit is sworn to and authorized by a judge.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B. The Device is pictured below:



**ATTACHMENT B**

**Particular Things to be Seized**

All records on the Device described in Attachment A that relate to violations of Title 18 U.S.C. §§ 2241(c), 2246(2)(C), 1151 & 1153 (Aggravated Sexual Abuse of a Minor in Indian Country), Title 18 U.S.C. § 2251(b) & (e) (Sexual Exploitation of a Child by a Parent), Title 18 U.S.C. § 2252(a)(2) and (b)(1) (Receipt/Distribution of Child Pornography), and Title 18 U.S.C. § 2252(a)(4)(B) and (b)(2), 1151 & 1153 (Possession of Child Pornography in Indian Country) involving Armondo PALMA and Brooklyn WILSON, including:

A. Images/videos/gifs of child pornography or child erotica; files containing images/videos/gifs; and data of any type relating to the sexual exploitation of minors or a sexual interest in children, material related to the possession thereof, and data of any type related to any person employing, using, persuading, inducing, enticing, or coercing any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting such visual depiction of such conduct, in any form wherever it may be stored or found, including, but not limited to:

i. Graphic Interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG) of child pornography; files relating to the distribution, receipt, or possession of child pornography, or information pertaining to an interest in child pornography;

ii.  Files in any form containing the visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors; and

iii.  Stories, text-based files, motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors.

B. Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, or pertaining to the sexual exploitation of minors or a sexual interest in children, that were transmitted or received using computer, cellular device, personal digital assistant, or some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

i.  Correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors or a sexual interest in children;

iii.  Any and all electronic and/or digital records and/or documents pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States mail or by computer, any visual depiction of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256 or relating to the sexual exploitation of minors;

2

iv. Any and all electronic and/or digital records and/or documents including any and all address books, names, and lists of names and addresses of minors visually depicted while engaging in sexually explicit conduct, defined in Title 18, United States Code, Section 2256; or relating to the sexual exploitation of minors;

v. Any and all records of Internet usage including usernames and e-mail addresses and identities assumed for the purposes of communication on the Internet. These records may include billing and subscriber records, chat room logs, e-mail messages, and include electronic files in a computer and on other data storage mediums;

vi. Any physical keys, encryption devices, dongles and similar physical items necessary to access computer equipment, storage devices or data;

vii. Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data; and

viii. Files, records, programs, logs, electronic communications, scanning programs, financial records, hacking software, or router configuration software.

C. Records or other items which evidence ownership, use, or control of the Device described in Attachment A.

D. Any global positioning system ("GPS") data for determining the location of the device, including any location data and metadata associated with images, video, or applications present on the Device described in Attachment A.

E. Credit card information including but not limited to bills and payment records, including but not limited to records of internet access.

F. Any and all information, correspondence (including emails), records, documents and/or other materials related to contacts, in whatever form, with minors involving the production,

3

possession and/or distribution of child pornography and the attempt or act of educing, enticing, coercing, or persuading a minor to engage in sexual acts.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage.

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.